IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LATRANDA TURNER,          §
                              §
      Plaintiff,               §
                              §
v.                               §         CIVIL ACTION NO. H-08-3657
                              §
MICHAEL J. ASTRUE,        §
COMISSIONER OF THE SOCIAL   §
SECURITY ADMINISTRATION    §
                              §
      Defendant.            §

**<u>MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT</u>**

Before the Court in this social security appeal are Plaintiff's Motion for Summary

Judgment (Document No. 14), and Defendant's Motion for Summary Judgment. (Document No.

15). After considering the motions, the administrative record, and the applicable law, the Court

ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is

GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the

Commissioner of the Social Security Administration is AFFIRMED.

**I. Introduction**

Plaintiff Latranda Renee Turner ("Turner") brings this action pursuant to Section 205(g)

of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse

final decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her application for supplemental security income benefits. Turner argues that the

Administrative Law Judge's ("ALJ") decision is flawed because: (1) the ALJ failed to properly

evaluate Turner's credibility regarding her complaints of pain; (2) the ALJ erred in failing to find that Turner's impairments were of listing level severity; and (3) the ALJ erred in failing to obtain testimony from a medical expert. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision and that the decision comports with applicable law. In particular, the Commissioner asserts that the ALJ properly evaluated the Plaintiff's credibility, that substantial evidence supports the ALJ's determination of the listing level severity, and that a medical expert was not required.

## II. Administrative Proceedings

On July 18, 2005, Turner applied for supplemental security income, claiming disability beginning on March 15, 2003, as a result of arthritis and pain in her left hip. (Tr. 132-38). The Social Security Administration denied her application on November 7, 2005. (Tr. 61). Turner's Request for Reconsideration was denied on January 30, 2006. (Tr. 61). Next, Turner requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, William B. Howard, held a hearing on September 6, 2007. (Tr. 20, 74-75). On September 28, 2007, the ALJ issued a decision finding Turner not disabled. (Tr. 58, 61-67).

Turner sought review of the ALJ's adverse decision with the Appeals Council on October 8. 2007. (Tr. 18). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy or procedural issue may affect the public interest. 20 C.F.R. §§ 404.970, 416.1470. On October 24, 2008, the Appeals

2

Council denied Turner's request for review, and the ALJ's September 28, 2007 decision thus became final.  (Tr. 1-3).

Turner filed a timely appeal of the ALJ's decision.  Turner then filed a Motion for Summary Judgment and Memorandum in Support.  (Document No. 14).  The Commissioner also filed a Motion for Summary Judgment and Memorandum in Support.  (Document No. 15).  This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 360.  (Document No. 11). There is no dispute as to the facts contained in the record.

## III.  Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).  Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence.  *Id.*  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision."

3

*Johnson v. Johnson*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v.*

*Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the

Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

      The United States Supreme Court has defined "substantial evidence," as used in the Act,

to be "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co.*

*v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less

than a preponderance."  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  The evidence

must create more than "a suspicion of the existence of the fact to be established, but 'no

substantial evidence' will be found only where there is a 'conspicuous absence of credible

choice' or 'no contrary medical evidence.'"  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.

1983).

## IV. Burden of Proof

      An individual claiming entitlement to disability insurance benefits under the Act has the

burden of proving his disability.  *Johnson*, 864 F.2d at 344.  The Act defines disability as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as

to limit the claimant in the following manner:

> [S]he is not only unable to do [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, [she] will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents [her] from doing any other substantial gainful activity, taking into consideration [her] age, education, past work experience and residual functional capacity, [she] will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Legget*, 67 F.3d at 564.

In the present case, the ALJ determined that Turner was not disabled at step five. At step one, the ALJ determined that Turner was not presently engaged in substantial gainful activity and had not worked since July 18, 2005. At step two, the ALJ determined that Turner's degenerative joint disease of the left hip, status post multiple hip surgeries, bilateral knee pain,

obesity, and crooked leg were severe impairments.  At step three, the ALJ determined that these

impairments, when considered both singly and in combination, did not meet or medically equal

the level of severity set listed in Appendix 1 of the regulations.  At step four, the ALJ concluded

that Turner's impairments precluded her from her past work.  Finally, at step five, the ALJ

concluded that Turner's impairments did not prevent her from performing other substantial

gainful activity, taking into consideration her age, education, past work experience and Residual

Functional Capacity ("RFC").  In this appeal, the Court must determine whether substantial

evidence supports the step five finding, and whether the ALJ used the appropriate legal standards

in arriving at his conclusion.  The appropriate legal standards include whether the ALJ's

assessment of Turner's credibility was proper, whether the ALJ erred in failing to find the

Plaintiff's impairments were of listing level severity (step three), and whether the ALJ erred in

failing to obtain testimony from a medical expert.


## V. Discussion

In determining whether substantial evidence supports the ALJ's decision, the court

weighs four factors:  (1) the objective medical facts; (2) the diagnosis and expert opinions of

treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to

by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational

background, work history, and present age. *Wren*, 925 F.2d at 126.

### A. Objective Medical Facts

The objective medical evidence shows that Turner's impairments resulted from multiple

surgeries during her childhood.  (Tr. 191, 234-35, 290-91).  The first surgery occurred on

December 2, 1971, when Turner underwent an operation on her right patella to correct congenital

dislocation of the joint. (Tr. 290-91). Subsequently, on August 4, 1974, Turner was diagnosed with congenital coxa vera of the left hip and again underwent surgery to correct bilateral congenital dislocation of the hips. (Tr. 283-84). The third surgery occurred on September 11, 1974, when an osteotomy of the left hip was performed. (Tr. 234-35). Finally, two additional surgeries, to remove hardware from prior operations, were performed on July 21, 1975 and again on July 20, 1981. (Tr. 191, 234-35). The medical records indicate that Turner recovered from each surgery. (Tr. 191, 199, 235, 240, 283). The medical progress notes dated July 20, 1975, state that "she has no limitation of motion or pain from the hip." (Tr. 235).

On June 14, 2007, Turner arrived at Ben Taub Hospital in Houston, Texas, complaining of hip pain and the inability to walk or move without pain. (Tr. 311). An X-ray of the left hip revealed severe degenerative joint disease, including a severely deformed left femoral head and neck associated with narrowing of the joint space, subchondral sclerosis and osteophyte formation. (Tr. 313). Turner was diagnosed with osteoarthritis of the hip, prescribed Naproxen, and referred to the orthopedic clinic for a follow-up appointment. (Tr. 308). Less than a month later, on July 2, 2007, Turner returned to Ben Taub Hospital complaining of sharp pain radiating from her back to her legs, gastrointestinal upset from the Naproxen prescription, and sleepiness from the Tylenol 3 prescription. (Tr. 309). The emergency room physician advised Turner to stop taking Naproxen and Tylenol 3, prescribed Tramadol and Sulindac, and instructed Turner to follow-up with both the orthopedic clinic and her primary care provider. (Tr. 308). As of the date of the hearing, the record indicates that Turner's medications included Celebrex and Epidrin, first prescribed in 2007 by Dr. Montesinos.[1] (Tr. 169). There is no additional

---

[1] However, there is no medical report or testimony from Dr. Montesinos to corroborate Turner's claims.

information in the objective medical record showing that Turner followed up with an orthopedic surgeon, or sought further medical treatment to alleviate her pain.

Additionally, the medical records indicate that Turner is obese.  According to the body mass index, Turner's BMI is 34.5, classifying her as obese.  (Tr. 167).  Medical progress notes from Dr. Sandra Scurria, dated October 10, 2005, indicate that Turner was advised of the importance of diet and exercise because of concerns about her obesity.  (Tr. 178).  However, there is no information in the record noting that Turner's obesity had an adverse effect on the range of motion in her joints.

Having examined the objective medical evidence in the record, it is clear that Turner suffers from degenerative joint disease of the left hip, status post multiple hip surgeries in the remote past, bilateral knee pain, and obesity.  However, none of the objective medical facts are sufficient to establish that Turner is unable to engage in any work-related activities.  The objective medical evidence factor supports the ALJ's decision.

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Additionally, a "treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.

2000) (quoting *Martinez v. Chater*, 64 F.3d 176 (5th Cir. 1995)).  The opinion of a medical

specialist is generally accorded more weight than opinions of non-specialists.  *Newton*, 209 F.3d

at 455.  "'[T]he Commissioner is free to reject the opinion of any physician when the evidence

supports a contrary conclusion.'"  *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d

1054, 1057 (5th Cir. 1987)).  Furthermore, regardless of the opinions, diagnoses, and medical

sources, "the ALJ has sole responsibility for determining a claimant's disability status.'"

*Martinez*, 64 F.3d at 172, 176.

The Social Security Regulations provide a framework for the consideration of medical

opinions.  Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a

physician's opinion must be based on:

(1)     the physician's length of treatment of the claimant;

(2)     the physician's frequency of examination;

(3)     the nature and extent of the treatment relationship;

(4)     the support of the physician's opinion afforded by the medical evidence of record;

(5)     the consistency of the opinion with the record as a whole, and

(6)     the specialization of the treating physician.

*Newton*, 209 F.3d at 456.  While opinions of treating physicians need not be accorded controlling

weight on the issue of disability, in most cases such opinions must at least be given considerable

deference.  *Id.*  As to opinions of examining physicians, the Commissioner gives more weight to

the opinion of a source who has examined the plaintiff rather than the opinion of a source who

has not performed such an examination.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Finally, as to the opinions of physicians who have reviewed the medical record, such as state agency physicians, the opinion is evaluated according to the above framework, and the ALJ must explain in his decision the weight given to those opinions. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii) & (iii), 416.927(f)(2)(ii) & (iii). An "'ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Newton*, 209 F.3d at 455 (quoting *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999)). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton,* 209 F.3d. at 455.

The only expert medical opinion in the record is that of Dr. Alan Cororve, the physician who conducted a consultative examination of Turner on October 6, 2005. (Tr. 187). Dr. Cororve reported that Turner had a full range of motion in all joints examined in the upper and lower extremities, using both active and passive exercises. (Tr. 188). Additionally, Dr. Cororve reported that Turner exhibited normal muscular strength in all muscles tested in the upper and lower extremities, and that Turner retained the ability to heel, toe, and tandem walk. (Tr. 188). In addition, Turner walked with a normal gait and did not demonstrate a limp. Furthermore, there was no evidence that Turner required a cane for ambulation. Although Turner admitted arthritis and pain at an intensity level of eight out of ten, she also admitted that she had not sought any treatment for the past six years. (Tr. 187). Dr. Cororve concluded that Turner "suffers from some type of arthritide, but she is able to function and it is not incapacitating." (Tr. 188).

In his written opinion, the ALJ found that none of Turner's complaints, either singly, or in combination, met or equaled a listing. (Tr. 63). In response, the Plaintiff raises issues about (1) the ALJ's failure to obtain medical testimony and (2) the ALJ's failure to find that Plaintiff's

impairments were of listing level severity.  Specifically, Turner claims that she meets the

requirements of Listing 1.02 and 1.03.[2]  (Document No. 14, at 9-10). The ALJ wrote:

> Despite claimant's representatives argument that claimant meets or equals listing 1.02 or
> 1.03 due to her degenerative joint disease in her knee, and her obesity, the medical
> evidence shows that claimant has a normal range of motion in her lower extremities.  She
> does not require an assistive device for ambulation.  And there is not objective medical
> evidence to support a listing level impairment.

(Tr. at 63).  Additionally, the ALJ included the medical opinion of the consultative examiner and

noted that Turner's obesity did not have an affect on the range of motion of her joints.  (Tr. 65).

The ALJ wrote:

> Claimant weighed 227 pounds standing 63 inches tall.  However, she was noted to have a
> full range of motion in all of her joints.  The patellar and ankle reflexes were depressed
> but muscular strength was normal and equal in all muscles tested in the lower extremities.
> She walked with a normal gait and did not demonstrate any limp.  (Exhibit 3F, page 3).
> Her treating physician encouraged claimant to lose weight.  (Exhibit 2F, page 2).  There
> is no indication in the record that clamant requires an assistive device for ambulation. . . .
> [S]he is not in any ongoing treatment for her hip.  When she was seen by the consultative
> examiner she had not had treatment for several years.  Given the normal muscle strength
> and normal ranges of motion, the infrequency of medical treatment for the hip in recent
> years and the fact that the claimant does not require an assistive device to ambulate, the
> undersigned concludes that she can sustain work at a reduced level, i.e., she can sustain
> work at the sedentary level of exertion.

---

[2] Listing 1.02: Major dysfunction of a joint(s) (due to any cause):  Characterized by gross
anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and
chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of
the affected joint(s), and findings on appropriate medically acceptable imaging of joint space
narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle),
> resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder,
> elbow, or wrist-hand), resulting in inability to perform fine and gross movements
> effectively, as defined in 1.00B2c.

Listing 1.03: Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint,
with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation
did not occur, or is not expected to occur, within 12 months of onset.  20 C.F.R. Pt. 404, Subpt.
P, App. 1.

(Tr. 65).  Both the medical evidence and expert medical opinion provide substantial evidence for the ALJ's determination.  Because the ALJ properly considered the opinion of the relevant medical expert, this factor weighs in favor of the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment, which could reasonably be expected to cause pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. *Id.*  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990) (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment, which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Turner testified at her hearing before the ALJ about her pain and physical activity levels.  She testified that her last hip surgery occurred in July of 1981.  (Tr. 35).  She said that she

suffered from problems on and off with her hip, but that she was only barely able to walk

beginning in the last five or six years. (Tr. 36). Turner testified that she was placed on crutches

by a doctor, and told that she would eventually need hip replacement surgery. (Tr. 36). She

stated that she had not continued to see a doctor because she was told that she would always have

this problem and that nothing could be done to correct her problem. (Tr. 36). She also said that

she expected to be on medication for the rest of her life. (Tr. 36). Additionally, Turner testified

that it was painful to walk without the use of crutches. (Tr. 38). She said that the orthopedic

surgeon denied her file because there were no surgical options available to her. (Tr. 39). She

also testified that she has asked for stronger pain medication, but the physicians have refused to

give it to her. (Tr. 49).

Turner also testified about the effect of her pain on her daily activities. She stated that

she has difficulty sleeping as a result of soreness and pain. (Tr. 41). She also testified that her

pain medication makes her sleepy. (Tr. 42). Turner reported that she cooks depending on how

she feels, takes care of her dishes, and washes her laundry once a month. (Tr. 44). She said that

her mother and friends help to vacuum and clean her home. (Tr. 45). However, Turner offered

no testimony or corroboration from her mother or friends with respect to her complaints about

her impairments.

The ALJ found that Turner's testimony was not entirely credible, stating, ". . . the

undersigned finds that the claimant's medically determinable impairments could reasonably be

expected to produce the alleged symptoms, but that the claimant's statements concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely credible." (Tr. 65).

Credibility determinations, such as that made by the ALJ in this case in connection with Turner's

subjective complaints of pain, are generally within the province of the ALJ to make. *See*

*Greenspan v. Shalala*, 38 F.2d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott*, 770 F.2d at 482, 485). Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history, and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

As of the date of the last administrative hearing, Turner was thirty-eight years old, had completed high school, and had past work experience as a receptionist, a property manager, and in customer service and baggage security. (Tr. 29-33). Ms. Kay Gilrig, a vocational expert, testified that Turner's past work as a receptionist would be classified as light, semi-skilled, at a level of 3; baggage security would be medium, semi-skilled, at level 3; telephone answering would be sedentary, semi-skilled, at level 3; customer service would be considered sedentary, skilled, at level 5; inventory would be medium, semi-skilled, at level 4; and property management would be light, skilled, at level 5. (Tr. 50-52). The vocational expert ("VE") testified that Turner had transferable skills in customer service and general clerical work. (Tr. 53). Based on his determination that Turner had transferable skills, the ALJ posed a hypothetical to the VE about Turner's ability to engage in other work:

> ALJ: Ms. Gilrig, assume with me a person of the same age, same education, same vocational background as the claimant; and assume with me the following limitations—hypothetical number one: this person could work at the level of sedentary as defined by the DOT, but requires—or should be allowed the option to use a cane. Could this person do any of the claimant's past work?
>
> VE: The past work—the phone work.
>
> ALJ: Would there be other jobs that the person could do?
>
> VE: Well, within that hypothetical, sedentary jobs such as receptionist how they're usually done within the economy, sedentary, semi-skilled, at 4. Well over 1,500 in the region; over 300,000 nationally. Appointment clerks, which are sedentary, semi-skilled, at 3. Again, over 1,000 in the region; over 300,000 nationally. Telephone solicitors, which are sedentary, semi-skilled, at 3. Over 1,000 in the region; over 300,000 nationally. Those jobs would fall within that hypothetical.

(Tr. 52-53). The ALJ then posed a second hypothetical to the VE:

> ALJ: Hypothetical number two, same as hypothetical number one; this time add this person needs one unscheduled break a day, but this break needs to be about two hours long. There be any jobs?
>
> VE: No, Your Honor.

(Tr. 53). Turner's attorney did not pose questions to the VE. Based on the VE's testimony, the ALJ found a significant number of jobs in the region that satisfied the requirements of the representative occupations. (Tr. 66). Because the ALJ properly considered Turner's education, age, and work history in determining potential jobs that Turner could perform, this factor also supports the decision of the AJ that Turner was not disabled.

## VI. Conclusion and Order

Considering the record as a whole, it is the opinion of this court that the ALJ properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the

relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 15) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 14) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this ____6th____ day of _____July_____, 2010.


_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE